IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANNE M. NULL, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CONCENTRIX CVG CUSTOMER ) <br> MANAGEMENT GROUP, INC., ) <br> ) <br> Defendant. ) | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

### Termination of Employment in Retaliation for Asserting Rights Under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

COMES NOW Plaintiff, Jeanne M. Null, by counsel, and for her Complaint for Damages against Defendant, Concentrix CVG Customer Management Group, Inc., states to the Court as follows:

1. That Plaintiff, Jeanne M. Null, is, and was at all times pertinent to this cause of action herein, a citizen of the United States of America, and a resident of Madison County, Illinois.

2. That Defendant, Concentrix CVG Customer Management Group, Inc., is, and was at all times pertinent to this cause of action herein, a foreign corporation, licensed and in good standing to do business in the State of Missouri, with its principal place of business and corporate headquarters located in Cincinnati, Ohio, and having an office in St. Louis County, Missouri, at 41 Village Square Shopping Center, Hazelwood, Missouri 63042.

3. That jurisdiction over this Complaint is based on the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

1

4. That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5. That Defendant, Concentrix CVG Customer Management Group, Inc., is an employer within the meaning of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., in that Defendant is, and was at all times pertinent to this cause of action, a corporation that has employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar weeks in the current and preceding calendar year.

6. That Plaintiff was employed with Defendant from January 21, 2019 until she was terminated on December 23, 2020.

7. That Plaintiff's title was Senior Executive Administrative Assistant, reporting to Bridgett Trask, President of North American Operations.

8. That throughout the time in which Plaintiff was employed with Defendant, she performed her job well, had good performance evaluations, and was the recipient of the "Fanatical Trophy" on March 3, 2020, for going above and beyond.

9. That Plaintiff is an "eligible employee" within the meaning of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., in that Plaintiff had been employed with Defendant for at least twelve (12) months and had provided at least 1,250 hours of service to Defendant within the previous twelve-month period.

10. That at all times relevant herein, Plaintiff's mother suffered from a "serious health condition", as defined by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., in that Plaintiff's mother's medical condition required continuing treatment by health care providers.

11. That Richard O'Neill, M.D., the medical care provider treating Plaintiff's mother, indicated on a Concentrix form submitted by Plaintiff to Defendant for approval of Family and

2

Medical Leave, that Plaintiff's mother, who was an invalid, would require care on an intermittent basis for such things as doctors' appointments, medical evaluation, testing and therapy approximately two (2) days per week from August 28, 2020 to August 28, 2021.

12. That the medical care required by Plaintiff's mother required Plaintiff to provide transportation for her mother an estimated two (2) days per week, three (3) times per month, in addition to whenever her mother would experience a flare-up of her medical condition.

13. That because of Plaintiff's need to miss work on an intermittent basis because of the "serious health condition" of her mother, Plaintiff was temporarily unable to perform the functions of her position, wherein Plaintiff was entitled to intermittent leave under 29 U.S.C. § 2612.

14. That Plaintiff had been approved by Defendant to take intermittent leave that she was entitled to under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2612, specifically, "leave taken intermittently or on a reduced leave schedule", as set forth in 29 U.S.C. § 2612(b), for the one-year period from August 17, 2020 to August 16, 2021, in order to care for her seriously ill mother.

15. That although Plaintiff was clearly entitled to intermittent leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2612, Defendant believed that by her taking advantage of her rights under the Family and Medical Leave Act of 1993, it was disruptive, such that Defendant held it against Plaintiff that she availed herself of her rights under the Family and Medical Leave Act of 1993, and ultimately Defendant terminated her in retaliation for doing so.

16. That the following are examples of facts supporting Plaintiff's contention that Defendant was not happy with her availing herself of her rights under the Family and Medical

3

Leave Act of 1993, and that the reason she was ultimately terminated from her employment was because she had availed herself of such rights:

    A. After Plaintiff completed the FMLA paperwork, her supervisor, Bridgett Trask, asked her "Why did you complete the FMLA paperwork? We could have worked it out." In response, Plaintiff stated that she wanted "to do it the right way" because she did not want to lose her job if she had to leave work in order to care for her mother. At that point, Bridgett Trask asked Plaintiff, "Like how much time are you thinking? Once a week? Twice a month?" In response, Plaintiff informed Bridgett Trask that she did not know, as it all depended on the people who helped her mother at home, in that they were not real reliable and could not always be counted on.

    B. After using her FMLA benefits and losing time from work a few times, Bridgett Trask stated to Plaintiff: "Do you have siblings who can help you out so you don't miss too much work?"

    C. Every time Plaintiff would e-mail or text Bridgett Trask about her not being able to come to work or having to leave work early, Bridgett Trask would **never** respond to her, indicative of Ms. Trask being unhappy with Plaintiff needing to miss time from work.

    D. On Monday, December 21, 2020, two (2) days prior to Plaintiff's termination on December 23, 2020, after she had been out from work the week of December 14, 2020 through December 18, 2020 in order to care for her mother, Bridgett Trask derogatorily stated to her as follows as Ms. Trask walked by her: "Oh, you still work here?", which was meant as a

4

      "dig" at Plaintiff for being out from work the week of December 14, 2020 through December 18, 2020.

  E. After having been employed with Defendant for approximately one and one-half (1½) years, Plaintiff stated to Bridgett Trask that she had been employed with Defendant for about one and one-half years (1½) years and had not yet received any type of pay raise. When Plaintiff asked Ms. Trask if or when she would get an increase in pay, Ms. Trask laughed at her and stated that she had been out of work a lot, wherein she would not be getting an increase in pay.

  F. No matter what Plaintiff said to Bridgett Trask, Ms. Trask was rude to her through her words and actions. Sometimes when Plaintiff would say to Ms. Trask when arriving at work "Good Morning", Ms. Trask would simply grunt at her, indicative of Ms. Trask being upset with Plaintiff for needing to miss time from work.

17. That Plaintiff was told that the reason for her termination was that she had lied when completing a form relative to Covid-19 titled "Health Declaration Form".

18. That Plaintiff did not lie when completing the "Health Declaration Form", as Defendant asserts, wherein this reason was merely a pretext to justify her otherwise unlawful termination.

19. Furthermore, Defendant asserted at the time of Plaintiff's termination that it was in the process of evaluating her position for a position elimination, and that it was determined that most of her duties had become unnecessary due to the pandemic.

5

20. That Defendant had not determined that most of Plaintiff's duties had become unnecessary due to the pandemic, wherein this reason was merely a pretext to justify her otherwise unlawful termination, based on the following facts:

   A. The elimination of Plaintiff's position was inconsistent with the fact that Marsha Mitchell, the Director of Human Resources, asked Plaintiff if she wanted her job back **after** Defendant had already terminated her; and

   B. It is inconceivable that it took ten (10) months for Defendant to decide to "eliminate" Plaintiff's position after Covid was already considered a pandemic, and that a vaccination was already in the works, such that after a sufficient number of Americans are vaccinated, the travel requirements of her supervisor, Bridgett Trask, would be reactivated.

21. That if Defendant wanted to eliminate Plaintiff's position because the travel requirements of Bridgett Trask had declined, Defendant could have simply laid Plaintiff off and then called her back when the travel picked up.

22. Furthermore, there was no effort on the part of Defendant to eliminate Plaintiff's position prior to her utilizing her Family and Medical Leave Act benefits.

23. That Defendant's violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., was not in good faith.

24. That as a proximate result of Defendant terminating Plaintiff from her employment in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., Plaintiff has sustained and will continue to sustain damages consisting of past, present and prospective wages and other benefits which she would have received had she not been terminated from her employment.

WHEREFORE, Plaintiff, Jeanne M. Null, prays for judgment in her Complaint for Damages against Defendant, Concentrix CVG Customer Management Group, Inc., for actual damages in a reasonable amount in excess of Seventy-Five Thousand Dollars ($75,000.00); liquidated damages; appropriate equitable relief; reasonable attorney's fees; for her Court costs and expenses incurred herein; and for whatever and further relief the Court deems just and proper.

Respectfully submitted,

By: *David M. Heimos*
David M. Heimos, #8069
Attorney for Plaintiff
230 South Bemiston, Suite 1200
Clayton, Missouri 63105
314-862-3333 Ext. 17
314-862-0605 Facsimile
davidmheimos@heimoslaw.com